Matter of Drey L. (Katrina M.) (2024 NY Slip Op 02348)

Matter of Drey L. (Katrina M.)

2024 NY Slip Op 02348

Decided on May 2, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 2, 2024

535706
[*1]In the Matter of Drey L. and Others, Alleged to be Permanently Neglected Children. St. Lawrence County Department of Social Services, Respondent; Katrina M., Appellant.

Calendar Date:March 28, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
Stephen D. Button, County Attorney, Canton (Keith S. Massey Jr. of counsel), for St. Lawrence County Department of Social Services, respondent.
Barbara Ann Montena, Saratoga Springs, for Thomas K., respondent.
Reginald H. Bedell, Willsboro, attorney for the children.

Fisher, J.
Appeal from an order of the Family Court of St. Lawrence County (Andrew S. Moses, J.), entered July 8, 2022, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
Respondent is the mother of four children (born in 2011, 2012, 2013 and 2014). In November 2017, the children were removed from the care and custody of respondent and, based on their needs, placed with either a foster family or in a residential treatment facility, where they have resided ever since. In March 2021, petitioner filed a petition to terminate respondent's parental rights on the basis of permanent neglect. Following fact-finding and dispositional hearings, Family Court found that the children were permanently neglected and terminated respondent's parental rights.[FN1] Respondent appeals.
We affirm. In a permanent neglect proceeding, the petitioning agency must prove, by clear and convincing evidence, that it made "diligent efforts to encourage and strengthen the parental relationship" and that the parent failed to adequately "plan for the future of the child[ren]," despite being able to do so (Social Services Law § 384-b [7] [a]; see Matter of Nevaeh N. [Heidi O.], 220 AD3d 1070, 1070 [3d Dept 2023], lv denied 41 NY3d 903 [2024]; Matter of Harmony F. [William F.], 212 AD3d 1028, 1029 [3d Dept 2023]). "Diligent efforts means reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child[ren]" (Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1050-1051 [3d Dept 2023] [internal quotation marks, brackets and ellipsis omitted]), lv denied 39 NY3d 913 [2023]; accord Social Services Law § 384-b [7] [f]), which includes "assisting the parent with visitation, providing information on the child[ren]'s progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Zaiden P. [Ashley Q.], 211 AD3d 1348, 1351-1352 [3d Dept 2022] [internal quotation marks and citations omitted], lvs denied 39 NY3d 911 [2023], 39 NY3d 911 [2023]). "The petitioning agency will be deemed to have fulfilled that obligation if appropriate services are offered but the parent refuses to engage in them or does not progress" (Matter of Issac Q. [Kimberly R.], 212 AD3d at 1051 [internal quotation marks, brackets and citations omitted]).
Here, the fact-finding hearing testimony demonstrates that petitioner arranged counseling for mental health and substance abuse issues, a peer advocate, caseworker visits and scheduled therapeutic visitation between the children and respondent. For the relevant time period between February 2020 through February 2021, a caseworker testified that respondent attended her mental health classes and chemical dependency appointments, but that she had relapsed in February 2020 requiring in-patient treatment and [*2]subsequently tested positive for cocaine on one occasion as a result of that relapse. The caseworker further testified that she remained in regular contact with respondent's counselors, including the peer advocate assisting respondent, but had difficulty meeting with respondent for monthly caseworker visits. Specifically, the caseworker testified that she was unable to meet with respondent on several occasions during the relevant time period — including multiple attempts in a row when respondent had previously confirmed the appointment but was not home at the time of the visit. According to the caseworker, August 2020 was the last time that she was able to meet with respondent before the filing of the petition in March 2021. Both the caseworker and a licensed clinical social worker, who served as a therapist during therapeutic visitation between respondent and the children, testified that respondent did not regularly attend visitation. According to the social worker, between April 2020 and October 2020, the mother attended two telephone visits and one virtual visit with the children. For her part, respondent's testimony generally corroborated that of the caseworker and the social worker, further admitting that she missed five or six meetings with the caseworker and another five or six scheduled visits with her children during the relevant time period. Although the appellate attorney for the children contends that the record does not adequately explain why petitioner did not fully explore the option to reschedule such missed meetings or visits, the record also reveals that respondent had confirmed her availability prior to the appointment being scheduled and did not consistently notify anyone in advance that she was no longer able to meet. Based on the foregoing, we are satisfied that petitioner met its threshold burden (see Matter of Nevaeh N. [Heidi O.], 220 AD3d at 1071; Matter of Zaiden P. [Ashley Q.], 211 AD3d at 1352-1353; Matter of Leon YY. [Christopher ZZ.], 206 AD3d 1093, 1095-1096 [3d Dept 2022]).
Similarly, although not challenged by respondent, we conclude that petitioner satisfied its burden in proving that respondent "failed to substantially plan for the children's future by taking meaningful steps to correct the conditions that led to their removal" (Matter of Chloe B. [Sareena B.], 189 AD3d 2011, 2013 [3d Dept 2020]). The record reflects that respondent had not met with the caseworker since August 2020, therefore not allowing the caseworker to visit and evaluate the suitability of respondent's home environment for the children. As it specifically related to respondent's intentions to have all four children returned to her, the record demonstrates that her proposed living arrangements failed to consider several medical, psychiatric, psychological and other social and rehabilitative needs that each child required — a point that she conceded during the hearing (see Matter of Issac Q. [Kimberly R.], 212 AD3d at 1051; Matter of Harmony [*3]F. [William F.], 212 AD3d at 1031-1032).
Finally, we disagree with respondent and the father that Family Court should have issued a suspended judgment instead of terminating respondent's parental rights. "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child[ren], and there is no presumption that any particular disposition, including the return of [the] child[ren] to a parent, promotes such interests" (Matter of Nevaeh N. [Heidi O.], 220 AD3d at 1072 [internal quotation marks and citations omitted]). Indeed, "a suspended judgment is warranted only when the parent, under the facts presented, has clearly demonstrated that he or she deserves another opportunity to show that he or she has the ability to be a fit parent" (Matter of Issac Q. [Kimberly R.], 212 AD3d at 1054 [internal quotation marks and citations omitted]). In that situation, "[a] suspended judgment offers a brief grace period designed to prepare the parent to be reunited with the child[ren], but is only appropriate where a delay would be consonant with the best interests of the child[ren]" (Matter of Isabella H. [Richard I.], 174 AD3d 977, 981-982 [3d Dept 2019] [internal quotation marks and citations omitted]). Here, although respondent testified that she had made improvements in her mental health and chemical dependency since the children were removed from her custody, the record fails to demonstrate how the children — particularly two children in residential treatment facilities due to their mental health — can be safely reunited with respondent. Further considering that the children have been in petitioner's care and custody since November 2017, and the record reveals limited action toward reunification by respondent during this time, we conclude that there is a sound and substantial basis in the record to support Family Court's determination to terminate her parental rights (see Matter of Issac Q. [Kimberly R.], 212 AD3d at 1054-1055; Matter of Zaiden P. [Ashley Q.], 211 AD3d at 1356). We have examined the remaining contentions of the parties and have found them to be without merit or rendered academic.
Garry, P.J., Egan Jr., McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Petitioner also filed a permanent neglect proceeding against the father, and Family Court similarly found that the children were permanently neglected by the father and terminated his parental rights. Although the father appealed from such order, this Court dismissed same for failure to perfect. Therefore, to the extent that the father filed a brief in this appeal contending that this Court should vacate the termination of the father's parental rights, he is not an appealing party in this proceeding, his substantive arguments are not properly before this Court and he may not be granted the affirmative relief that he seeks (see Matter of Brandon N. [Joseph O.], 165 AD3d 1520, 1521-1522 [3d Dept 2018]; see also Matter of Bashier v Adams, 217 AD3d 764, 765 [2d Dept 2023]; Matter of Khavonye FF. [Latasha EE.], 198 AD3d 1134, 1135 n 3 [3d Dept 2021]).